(No. 42845.—

JOHN SCHILB *et al.,* Appellants, *vs.* VINCENT P. KUEBEL, Circuit Clerk, *et al.,* Appellees.

*Opinion filed Oct. 7, 1970.—Rehearing denied Dec. 3, 1970.*

KLUCZYNSKI and SCHAEFER, JJ., dissenting..

SAM S. PESSIN, of Belleville, (JOHN J. O'TOOLE, COR-NELIUS F. DORE, and JOHN C. CASTANES, of counsel,) for appellants.

ROBERT H. RICE, State's Attorney, of Belleville, (EUGENE H. WIDMAN, of counsel,) for appellees.

EDWARD V. HANRAHAN, State's Attorney, of Chicago, (DANIEL P. COMAN and THEODORE A. SHAPERO, Assistant State's Attorneys, of counsel,) for *amicus curiae*.

Mr. JUSTICE BURT delivered the opinion of the court:

Plaintiffs appeal from an order of the circuit court of St. Clair County dismissing their complaint against defendants, clerk of the circuit court of St. Clair County, county treasurer of St. Clair County and county of St. Clair, in a class action wherein plaintiffs alleged that the cost retention provisions of section 110—7(f) of the Code of Criminal Procedure of 1963 (Ill. Rev. Stat. 1963, ch. 38, par. 110—7(f)) are unconstitutional, and sought recovery on behalf of all those who had been charged with and had paid bail bond costs under the statute in question in the circuit court of St. Clair County from and after the effective date of the act. The case involves substantial constitutional questions, giving this court jurisdiction on direct appeal.

The cause was submitted in the trial court on a stipulation of facts which we summarize here to the extent necessary for purposes of this decision. The act in question was adopted on August 14, 1963. Since that time Vincent P. Kuebel, clerk of the circuit court of St. Clair County, and Maurice J. Joseph, treasurer of said county, and their predecessors in office, acting under the statutory provisions, have collected from plaintiff, John Schilb, and many other defendants in criminal actions, who were acquitted by trial courts of their respective charges, a sum equal to 10% of their respective deposits of bail security. These collections were made in good faith by these officials in accordance with their oaths of office as understood by them and under color of authority of the act. The exact account of all of said collections are present in the records of said offices and should be agreed upon by the parties for subsequent purposes in the event the court shall award the relief sought by plaintiffs.

On January 16, 1969, Schilb was arrested and charged with leaving the scene of an accident, on which he posted $50 cash bail security and obstructing traffic on which $25 cash bail was posted. He was found guilty of one charge and not guilty of the other. He was charged and paid, in

addition to any fine, $5 and $2.50, or a total of $7.50 as cost charges for such bail. A large number of other defendants have paid the 10% bail charge required by the statute after being found guilty (whether by trial or on plea) or upon being found not guilty (either by trial or dismissal.) It was agreed that the essential questions of fact, as concerns the issue, are similar as to all defendants in all criminal cases in said circuit court, since the effective date of the act, who posted cash bail security, and that questions of law are similar in all such cases also as they pertain to the issues, particularly the claim of unconstitutional collection of bail bond costs which is common to the interest of such defendants in criminal cases in said court.

The parties further agreed that there was a *bona fide* dispute between them brought without collusion; that it is impractical if not impossible to join all members of the class to which plaintiff belonged as parties; that this action would avoid undue and unnecessary multiplicity of actions and that plaintiff, Schilb, brings the action in a representative capacity for and on behalf of each member of the class whose interests are similar who would proportionately share in the expenses of the litigation.

In addition to including in their stipulation the entire provisions of section 110—7, the parties refer to section 110—8 (Ill. Rev. Stat. 1969, ch. 38, par. 110—8) and state that it provides in essence for depositing of cash, stocks or bonds in the full amount of bail or pledging interests in real estate in double the amount of bail fixed without payment of any fee and that actual costs of administering the provisions of sections 110—7 and 110—8 are substantially the same but that there may probably be a slightly higher cost attendant upon administering section 110—8.

Finally, the parties agreed that the amount of bail in each particular case is not fixed by the clerk or treasurer but by a judge whose discretion is not guided by statute, rule of court or any fixed standard; that various judges fix the

amount of bail for the same types of offenses at various and divers amounts, without relationship as to guilt or innocence of the particular defendant and without relationship of the particular offense and the bail fixed.

Plaintiffs contend that the cost retention provision of section 110—7(f) of the Code of Criminal Procedure is unconstitutional because it violates the equal-protection and due-process clauses of the fourteenth amendment to the Federal constitution and section 2 of article II of the constitution of Illinois. Specifically it is urged that the cost retention provision creates a discriminatory disparity within a homogeneous class; that it operates to create an unconstitutional disparity between the affluent and nonaffluent and that it is unconstitutional as creating a disparity among those obtaining release by the deposit of 10% of the amount of bail. Additionally it is claimed that the provision is illegal and void as in violation of section 19 of article II of the Illinois constitution because it amounts to requiring an assessment of costs against a discharged defendant. Defendants argue that these claims of unconstitutionality are without merit. They also suggest that there is no basis for the bringing of a class action under the facts here involved.

In 1963 the General Assembly enacted the Code of Criminal Procedure (Ill. Rev. Stat. 1963, ch. 38, pars. 100 —1 *et seq.*) Among its comprehensive provisions are those of article 10 relative to bail in criminal cases. (Ill. Rev. Stat. 1963, ch. 38, pars. 110—1 to 110—5 inclusive.) Section 110—2 provides for the release of an accused on his own recognizance where from all the circumstances the court is of the opinion that the accused will appear as required either before or after conviction. The statute imposes criminal sanctions for failure to appear as required as well as provisions for forfeiture and collection. (Ill. Rev. Stat. 1963, ch. 38, par. 110—2.) Section 110—7 represents a new departure in dealing with the problems of bail in this State. It provides that a person for whom bail has been set

shall execute a bail bond and deposit with the clerk of the court a sum of money equal to 10% of the bail upon the deposit of which he shall be released subject to the conditions of the bond which involve forfeiture of the full amount for nonappearance as well as the imposition of a criminal penalty. Section 110—7(f) provides for a return of 90% of the bail deposit when the conditions of the bond have been performed and the accused has been discharged from all obligations with the stipulation that the clerk shall retain as bail bond costs 10% of the amount deposited. (Ill. Rev. Stat. 1963, ch. 38, pars. 110—7(a), (b), (f).) The amount retained represents one percent of the amount of bail originally set by the court. Section 110—8 provides for a different type of procedure in posting bail from that prescribed in section 110—7. It provides that "in lieu" of the bail deposit provided for in section 110—7 any person for whom bail has been set may execute the bail bond with or without sureties, which bond may be secured by a deposit with the clerk of an amount equal to the bail, of cash, or stocks and bonds, or by real estate situated in this State with unencumbered equity not exempt, owned by the accused or sureties worth double the amount of bail set in the bond. (Ill. Rev. Stat. 1963, ch. 38, par. 110—8.) With the exception of certain changes not directly involved in the questions presented in this appeal the foregoing statutory provisions remain substantially the same at this time and the three alternative means or methods specified in article 110 constitute the only ways in which release on bail can be had in this State. See: Ill. Rev. Stat. 1969, ch. 38, pars. 110—2, 110—7, 110—8.

The above legislative enactments represent substantial reforms in bail practices in this State and came about only after extensive studies of certain evils inherent in our former system and a comparison with practices in the Federal courts and in other jurisdictions. (See Committee Comments, S.H.A., ch. 38, § 110—1 *et seq.* 298 *et seq.*) From

this rather extensive and revealing discussion it appears that the central purpose of the legislature in enacting sections 110—7 and 110—8 was to severely restrict the activities of professional bail bondsmen who customarily collected 10% of the amount of a bond as a fee which was retained whether or not the conditions of the bond were met by the accused. The prevalence of this practice was noted in our opinion in *People ex rel. Gendron* v. *Ingram,* 34 Ill.2d 623, 626, in which this court sustained the constitutionality of the 1965 amendment to section 110—15 of the Code of Criminal Procedure making sections 110—7 and 110—8 the exclusive means of posting bonds in criminal cases in this State. In short, as the Committee Comments show, the object of the statutes was to reduce the cost of liberty to arrested persons awaiting trial. One of the matters noted in connection with the former practice was that the pecuniary loss deterrent to jumping bail which was its central idea was simply not working in a system where payment of a bond premium was required without regard to performance of conditions. At the same time certain studies showed that, in spite of collecting a 10% fee, actual judgment on forfeitures paid by professional bondsmen amounted to only one per cent of the bonds written. It was reasoned, therefore, by those who studied the problem that a much fairer system would result it a plan such as that provided by section 110—7 were evolved with an accused, who has faithfully performed the conditions of his bond, retaining substantially the amount formerly pocketed by the professional bondsman while allowing to the courts a reasonable fee as bond costs for handling bail bonds and offsetting the monetary amount of any loss resulting from the occasional bail jumper where the professional bondsman under the former system might have forfeited the amount of bail. Otherwise stated, the ultimate objective of this reform was to regain from professional bondsmen the control of bail releases and restore such control to the courts where it rightfully belongs. (See Bowman,

The Illinois Ten Per Cent Bail Deposit Provision, 1965 Ill. L. Forum 35, 36-37.) As the author points out, the scheme devised in this State has since been copied in bills introduced in other States and in Congress. As finally adopted the bill passed by Congress eliminated the 10% retention of the cash deposit. (18 U.S.C. 3146(a)(3).) But New York's applicable legislation provides that cash, stocks and bonds may be deposited in lieu of bail and that a fee of two per cent for receiving, keeping and paying out the same may be charged. See: N.Y. Code of Criminal Procedure, vol. 66, sec. 586.

Plaintiffs' first point is that section 110—7(f) of the Code of Criminal Procedure is unconstitutional because it requires those seeking release under the provisions of section 110—7 to pay bond costs, whereas those who use either section 110—2 (recognizance) or section 110—8 (deposit of full amount in cash or securities or pledge of real estate in double the amount) are not required to pay any costs whatever. In this connection plaintiffs argue that all accused are *sui generis*, for each seeks pretrial release, and that to require payment of costs as a condition of pretrial freedom in the one case and not in the others constitutes an unconstitutional discrimination among the members of a homogenous class.

With respect to plaintiffs' position on unconstitutional classification it will be observed that it rests entirely upon the assumption that there is no basic or reasonable difference between those obtaining release under sections 110—2, 110—7 and 110—8. It is said that all are accused of crime and seek release from pretrial custody and that the difference in their treatment relative to cost is a violation of fundamental concepts of equal protection and due process. In other words, the argument is that because the result of release is sought in each case there is but one class of persons who must be treated alike. However, though the end result may be release in all cases, whatever course may be

followed, it must be apparent, we believe, that the means by which release is sought is entirely different in each of the sections of the statute in question. This is not only factually so but historically the legislative approach to the problems presented was to design the different sections of the statute to meet specific separate problems. (See Committee Comments, S.H.A., ch. 38, § 110—1 *et seq.* p. 298 *et seq.*) Thus section 110—2 providing for release on the accused's own recognizance was designed to meet a condition revealed by factual studies which proved that the great majority of persons released on bail have no intention of violating bail and will appear for trial. The studies further developed a second premise, that to the extent that pecuniary loss is a deterrent, such financial loss should be minimized in the case of the person who appears for trial. Section 110—7 (deposit of 10% of the amount fixed for bail with a return of 90% of the deposit on performance of conditions) was designed specifically to fulfill the needs shown by the second premise and curtail the activities of the professional bondsman. This section, by its wording, is obviously designed as the principal method to be used in giving bail. Section 110—8 provides for a method which may be used in "lieu of the bail deposit provided for in section 110—7" and, according to the comment, is designed primarily to meet the need of a method of posting relatively small amounts of cash bail in traffic cases and the like. It is stated in the above reference at p. 324 : "It should always be kept in mind, however, that section 110—7 provides for one type of procedure in posting bail, section 110—8 another."

It appears that the legislature did not consider itself as dealing with a single problem—*i.e.,* a provision of procedures for those entitled to bail generally. Instead it regarded situations possibly giving rise to separate needs and sought to accommodate those requirements. As to section 110—7, as already related, it sought to reduce the cost of bail and the high incidence of "bail gouging" by providing

a method whereby any citizen accused of crime might have his liberty pending trial with a minimum of cost. On the other hand, it was careful to recognize and protect the rights of those who could and should be released upon their own recognizance within the limits of judicial discretion without any bond cost whatever. In none of the provisions in question is release conditioned upon the payment of bail costs in advance nor can payment of the one percent fee ultimately deducted under section 110—7(f) be considered a condition precedent to the selection of section 110—7 as the method of acquiring release. The only condition precedent to release under the provisions of section 110—7 is the payment of 10% of the amount of bail as fixed by the court, and plaintiffs disclaim any thought of questioning the constitutionality of that requirement, for they say that the sole question before the court is the constitutionality of subparagraph (f) of section 110—7. Further, they say: "The plaintiffs herein wish to make it eminently clear that they do not in any manner fault the principles of Article 110 of the Illinois Code, they do however, take exception to the cost provision of Section 110—7(f) which is patently unconstitutional." The ultimate question on this portion of the case is, therefore, whether the provisions of subsection (f) of section 110—7 are fatal to an otherwise admittedly valid legislative classification as provided in the three sections in question and particularly that of section 110—7.

This court has held that the test whether a legislative act affords equal protection to all persons affected by it is "whether the legislative enactment requires the same means and methods to be employed alike by the persons composing the class affected so that the law operates uniformly on all persons similarly situated." (*Reif* v. *Barrett*, 355 Ill. 104, 121.) Where a law affects all members of the same class alike it is not objectionable as constituting class legislation. (*Smith* v. *Hill*, 12 Ill.2d 588, 598.) Under article 10 of the Code of Criminal Procedure as presently enacted those en-

titled to bail have a choice of three methods to be used in securing release, and the choice is entirely voluntary and without compulsion. Those who elect to secure release by the deposit of 10% of the amount of bail under the provisions of section 110—7 constitute a separate class under the legislative plan and purpose as already indicated. They are not automatically placed in this class or category by the law. They join only by the exercise of their own volition. Presumably they know that the amount deposited will be subject to deduction and we know of no law or constitutional provision which would preclude their being required to pay a reasonable amount for the privilege extended to those who elect to come into this class. The requirement of a fee to help defray the cost of administrative services in the courts is a traditional and basic concept recognized as valid by this court. See: *People ex rel. Flanagan* v. *McDonough,* 24 Ill.2d 178, 180-181.

Plaintiffs also contend that the cost retention provision of section 110—7(f) creates an unconstitutional disparity between the affluent and nonaffluent. It is said for a supposed example that accused "A" availing himself of section 110—8 deposits the full amount of bond and pays no cost, whereas accused "B", lacking sufficient property, obtains his release by depositing 10% of the full amount of bond under section 110—7 and is assessed a cost. It is argued that accused "B" is thus assessed a cost merely because his lack of affluence makes him unable to obtain his release by depositing the full amount under the provisions of section 110—8. Without stating any factual source, plaintiffs further state that "a considerable percentage of individuals, like accused 'B' have *no choice* but to seek release on their own recognizance under Section 110—2 or the 10% provision of Section 110—7" because they have neither cash nor real estate in sufficient amount to post the full amount of their bail. These are said to be "poor men" who should not be discriminated against due to their lack of wealth.

Plaintiffs say that if the size of a deposit for bail is the distinguishing factor which rendered this group different from those who deposit the full amount of bail, there is an unconstitutional differentiation which is not cognizable in law and creates a disparity based on wealth. In support of their position plaintiffs cite a number of cases such as *Griffin* v. *Illinois*, 351 U.S. 12, 100 L. Ed. 891, 76 S. Ct. 585, establishing the general proposition that the individual cannot be penalized in his quest for justice due to lack of wealth. Defendants concede the validity of this principle but deny that it is applicable under the facts presented here.

The difficulty with plaintiffs' position is that it is based primarily on the assumption that a majority or at least "a large percentage" of those seeking bail would prefer to elect to proceed under section 110—8 but lack the financial means to do so and are therefore forced against their wills to ask for bail under section 110—7 by posting the deposit. We find no support for this assumption in any of the stipulated facts. As we view the situation it is just as reasonable to assume that most of those eligible would elect to perfect bail under section 110—7 because of the convenience it affords and the very small cost of only one percent actually involved. Proceedings under section 110—8 necessarily involve tying up money and property for an indefinite period. In the case of a large bond the amount pledged would be in proportion and the consequent economic loss through deprivation of the opportunity to invest these funds could be considerable. It is reasonable to suppose, therefore, that even the relatively affluent would prefer to make bail under section 110—7. In any event we do not believe it can reasonably be said that choice between the means to be used is necessarily dictated by wealth or lack of wealth of the accused.

Where questions of classification are involved the reasons justifying the classification need not appear on the face of the statute and the classification will be upheld if any

state of facts can reasonably be conceived to sustain it. The burden therefore rests upon one who assails the statute to negate the existence of such facts. (*Thorpe* v. *Mahin,* 43 Ill.2d 36, 45; *Department of Revenue* v. *Warren Petroleum Corp.,* 2 Ill.2d 483, 489-490.) As already indicated, we believe that facts can reasonably be conceived to sustain the legislation here involved as against plaintiffs' argument that there is necessarily a discrimination based on wealth. We find nothing in plaintiffs' argument which reasonably tends to negate the existence of those facts and certainly there is nothing by way of concrete evidence which does so.

As to plaintiffs' argument that the cost retention provision of section 110—7(f) creates a disparity among those obtaining release by the deposit of 10% of the amount of bail, it is said that accused "A" whose bond is set at $10,000 must deposit $1,000 and that upon fulfillment of conditions he receives a refund of $900 with the result that he has paid a cost of $100. "B" on the other hand, whose bond is fixed at only $1,000, deposits $100 and receives a refund of $90 resulting in a cost of only $10. It is claimed that there is no rational basis for this difference. While the dollar amount in the supposed cases is different, each has paid an amount equal to one percent of his bail and therefore there is payment of the same proportionate amount in each case. Plaintiffs present no authority which sustains the proposition that enacting a charge in the same proportion in such cases involves unconstitutional discrimination and we know of no authority which would support this claim. Historically many fees and charges for the services of court officers have been fixed in proportion to the amount involved. As far as we know there has been no suggestion of unconstitutional action in such cases as long as all persons similarly situated are charged in the same proportion and at the same rate. Flat rates are also found in the field of taxation, as defendants suggest, including income taxes, retailers' occupation taxes, real-estate taxes, use taxes, and

inheritance and transfer taxes. The constitutionality of these enactments has been repeatedly sustained by the courts.

Finally, there is the contention that the cost provision of section 110—7(f) is illegal and void because it amounts to an assessment of court costs against a discharged defendant. Plaintiffs cite *Wells* v. *McCullock,* 13 Ill. 606, and *Giaccio* v. *Pennsylvania,* 382 U.S. 399, 15 L. Ed. 2d 447, 86 S. Ct. 518, on this point. *Wells* involves an attempt to impose on an acquitted defendant court costs he has made in his defense. The court, relying largely upon the provisions of the statute relative to disposition of the question of costs in such cases, held that the defendant was not liable for their payment. In *Giaccio* the validity of a Pennsylvania statute authorizing the jury to impose the costs of a criminal prosecution on an acquitted defendant in a misdemeanor case was in question. The court held the statute unconstitutional on the ground of vagueness and the absence of any standards sufficient to enable a defendant to protect himself against arbitrary and discriminatory imposition of costs by a jury. But it did not say that the imposition of such costs would be unconstitutional in any event. However, whatever the rule might be as to the imposition of court costs on an acquitted or discharged defendant, it has no application here. The payment of costs for prosecution is governed by an entirely different statute from that dealing with costs charged for the administration of bail bonds. The statute concerning the latter, as already observed, is section 110—7 of the Code of Criminal Procedure. Costs of prosecution in criminal cases are provided for in section 180—3 of the Code of Criminal Procedure as follows: "When any person is convicted of an offense under any statute, or at common law, the court shall give judgment that the offender pay the costs of the prosecution." (Ill. Rev. Stat. 1969, ch. 38, par. 180—3.) This statute obviously refers only to court costs and has no reference to bond costs which are chargeable regardless of what subsequently occurs in the

prosecution of the case and regardless of the guilt or innocence of the accused. It may be conceded that court costs sustained in his defense may not properly be assessed against an accused who has won his discharge or acquittal but that has no bearing whatever on bond costs and the retention of a percentage of such costs is not tantamount to the assessment of court costs against a discharged defendant.

In conclusion we find that the classifications provided for in the statutes here involved bear a reasonable relation to the objects sought to be accomplished and are uniform as to all members of a particular class sought to be affected. No unconstitutional discrimination is involved and the legislative enactments are not in violation of fundamental concepts of due process or equal protection of the law. Since the conclusion we have reached favors constitutionality it becomes unnecessary to discuss the other question raised, *i.e.,* the propriety of a class action.

The judgment of the circuit court of St. Clair County is affirmed.

*Judgment affirmed.*

Mr. JUSTICE KLUCZYNSKI, dissenting:

I cannot agree with the conclusions of the majority opinion.

Through *Griffin* v. *Illinois,* 351 U.S. 12, 100 L. Ed. 891, 76 S.Ct. 585, and its progeny, it has become well established that the equal-protection and due-process clauses of the fourteenth amendment require that a defendant not be penalized in a criminal proceeding due to a lack of wealth. I believe that this type of penalty exists in the treatment of various defendants under sections 110—7 and 110—8 of the Code of Criminal Procedure. A disparity of treatment results because under 110—7 the clerk retains 10% of the bail deposit as a cost whereas under 110—8 or 110—2, no costs are involved. It is discriminatory in that some defendants cannot voluntarily choose under which bail provision

they will be released. The defendant who, because of lack of wealth, cannot meet the requirements of 110—8 and who cannot qualify for release under 110—2, is forced to seek relief under 110—7, the only section which involves a cost. The majority would have us believe that there are no non-affluent defendants or that if given the choice most defendants would choose section 110—7 for economic reasons. This court must take judicial notice of the fact that many defendants cannot afford to pay the full amount of the bail. Plaintiff has cited many authorities (Bail Reform Act of 1966, 18 U.S.C. 3141-3152; Congressional Record, vol. 112 Con. Rec. 89th Congress, Second Session pp. 12488-12504; S.H.A. ch. 38, art. 110, Committee Comments, p. 298; Attorney General's Committee on Poverty and the Administration of Criminal Judicial Procedure, U.S.C. Cong. and Admin. News 1966; National Conference on Bail and Criminal Justice, May 27, 1964) for the proposition that as the amount of bail increases, the percentage of defendants who can pay the full amount of the bail decreases. In addition, the Committee Comments (S.H.A. ch. 38, art. 110, at p. 300) state that section 110—8 is an alternative to 110—7 for "those who have the means." Once it is established that certain defendants are not financially able to proceed under section 110—8, it is no longer significant that most or all defendants would elect to proceed under section 110—7. The important consideration is not what section they would elect, but rather whether every defendant has a choice of the two sections. Realizing that certain defendants have no choice but to pay a cost under 110—7, while other financially able defendants can elect to pay nothing under 110—8, I must find that the sections in question deny equal protection and due process.

Further, in *Giaccio v. Pennsylvania,* 382 U.S. 399, 15 L. Ed. 2d 447, 86 S.Ct. 518, the United States Supreme Court considered the question whether a defendant may be punished after finding him not guilty. The concurring

554

opinion specifically found: "* * * the Due Process Clause of the Fourteenth Amendment does not permit a State to impose a penalty or costs upon a defendant whom the jury has found not guilty of any offense with which he has been charged." (382 U.S. at 405.) This same concept has been recognized in Illinois in our constitution, case law, and legislative enactment. Section 19 of article II of the Illinois constitution provides that every person "ought to obtain, by law, right and justice freely, and without being obliged to purchase it, * * *." Any defendant who is forced through economic circumstances to proceed under section 110—7 is "obliged" to pay costs for his constitutional right to pretrial liberty in violation of this provision.

This court, in *Wells* v. *McCullock,* 13 Ill. 606, held that a party who is indicted under the Criminal Code, and is acquitted, is not liable for costs. While it is true that the case involved the interpretation of a statute then in effect, a statute similar to it is presently in effect. (Ill. Rev. Stat. 1963, ch. 53, par. 32.) The court in *Wells* found that "An acquittal, or other legal discharge, absolves the defendant from the payment of *all* costs." (Emphasis added.) (13 Ill. at 608.) Any cost, whether it be termed court cost or administrative cost, is an expense in a criminal defense, and if the defendant is acquitted, imposing such a cost, in my opinion, violates the due-process clause and section 19 of article II of the Illinois constitution.

Mr. JUSTICE SCHAEFER joins in this dissent.