THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* DAWN LANGE, Defendant-Appellant.—THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* GREG LANGE, Defendant-Appellant.

Fourth District   Nos. 4—83—0154, 4—83—0155 cons.

Opinion filed August 30, 1983.

GREEN, J., dissenting.

John P. O'Rourke, of Dukes, O'Rourke, Stewart, Martin & Helm, Ltd., of Danville, for appellants.

Michael M. McFatridge, State's Attorney, of Paris (Robert J. Biderman and David E. Mannchen, both of State's Attorneys Appellate Service Com-

mission, of counsel), for the People.

PRESIDING JUSTICE WEBBER delivered the opinion of the court:

The defendants, Greg and Dawn Lange, were charged with attempted murder and other related offenses. They were released on bond after each had posted $10,000 (10% of the $100,000 bond that had been set). The charges were later dismissed. The People appealed. Defendants' bonds pending appeal were then set in the reduced amount of $10,000 each. From the original deposits of $10,000 made by each defendant the circuit clerk of Edgar County retained $1,000 as the cash bail on the bonds pending appeal; he also retained another $1,000 each as costs assessed against the original bail of $10,000 and refunded $8,000 to each defendant. On appeal (*People v. Edwards* (1982), 105 Ill. App. 3d 822, 434 N.E.2d 1179), this court affirmed the dismissals and ordered a refund of $1,000 to each defendant of the costs which we held had been prematurely assessed.

We remanded for the purpose of making the refunds and a dispute then arose as to the amounts. The defendants maintained that they were each entitled to $1,900—the $1,000 previously improperly assessed and $900 from the appeal bonds. The trial court ordered the clerk to refund $1,000 to each defendant as costs improperly assessed, but further held that the clerk was entitled to retain $1,000 each as to the penalty on the $100,000 bond originally set. Defendants appeal, and we reverse and remand with directions.

■■ Section 110—7 of the Code of Criminal Procedure of 1963 sets forth the general procedures for posting bail in criminal cases. (Ill. Rev. Stat. 1981, ch. 38, par. 110—7.) Subsection (a) provides that 10% in cash of the bail set shall be deposited with the clerk of the court. Subsection (f) authorizes the clerk to retain 10% of the deposited cash, or 1% of the total amount of the bond, as bail bond costs. The statute states:

> "(f) When the conditions of the bail bond have been performed and the accused has been discharged from all obligations in the cause the clerk of the court shall return to the accused, unless the court orders otherwise, 90% of the sum which had been deposited and shall retain as bail bond costs 10% of the amount deposited." Ill. Rev. Stat. 1981, ch. 38, par. 110—7(f).

The statute clearly states that the time for assessing costs is at the close of the case, when the accused has been discharged. As we stated in the first appeal of this case, assessment of costs at any ear-

lier stage is premature and improper. (*People v. Edwards* (1982), 105 Ill. App. 3d 822, 830, 434 N.E.2d 1179, 1184.) This point is not contested on appeal.

■ The issue on appeal is whether such costs should be determined on the basis of the original bond deposit or on the basis of the bond deposit that is held by the clerk at the close of the case. Admittedly, the statutory language "sum which had been deposited" and "amount deposited" is ambiguous. The State argues that the statute should be read to direct the assessment of costs on the basis of the original amount that was deposited. We believe, however, that the better interpretation of this statute would have costs assessed on the basis of the amount of the bond deposit that is properly in the hands of the clerk at the time that the assessment is to be made, namely, at the close of the case.

If the court has reduced the bond and the deposit required, it should follow that the costs should be reduced proportionately. Were this not so, there would arise situations where the bond is reduced to a point such the the amount actually on deposit at the close of the case may be less than the 1% of the original bond necessary to pay the bond costs. Since the statute only allows a clerk to "retain" part of the deposit to cover costs, if the costs are greater than the deposit, they cannot be recovered in full. This anomalous result is avoided by determining the "amount deposited" at the same time that costs are being assessed at the close of the case. This was obviously the legislature's intent. It should be pointed out that the same rule would apply if the amount of the original bond were later increased. The amount of the bond posted at the close of the case will control.

We do not regard the language from *Schilb v. Kuebel* (1970), 46 Ill. 2d 538, 264 N.E.2d 377, cited in the dissent, as either controlling or persuasive. A bond is "originally" set when an information or indictment is presented to a court and a warrant is ordered to issue. This is an *ex parte* proceeding and the amount is ordinarily that recommended by the State's Attorney. The defendant has no opportunity to contest that amount until arraignment. It would be fundamentally unfair to a defendant to carry through to the assessment of costs such an "original" amount. Furthermore, the *Schilb* court was not faced with the problem presented in the instant case. It was concerned with the constitutionality of the entire scheme, not with specific amounts. The bonds there were fixed by statute and rule and were not subject to alteration.

No doubt the circuit clerk, and thus the county, may lose some revenue if bonds are reduced. While we have no hard empirical evi-

dence on the matter, it is at least arguable that more bonds are increased, principally after conviction and pending appeal, than are decreased. Instead of losing costs under the rule enunciated here, the counties may indeed gain.

■ For the foregoing reasons, we conclude that the circuit court's order was error. Pursuant to Supreme Court Rule 366(a)(5) (87 Ill. 2d R. 366(a)(5)), the circuit clerk of Edgar County is ordered to retain $100 from each defendant as bail bond costs and to pay over to each defendant $900 which was retained in excess of costs. Accordingly, the order of the circuit court of Edgar County is reversed.

Reversed and remanded with directions.

MILLER, J., concurs.

JUSTICE GREEN, dissenting:
I dissent.
I agree that the statutory language "sum which had been deposited" and "amount deposited" is ambiguous, but I do not agree that the better interpretation of section 110—7(f) of the Code of Criminal Procedure of 1963 (Ill. Rev. Stat. 1981, ch. 38, par. 110—7(f)) is to base the amount of the clerk's fee upon the amount of the bail deposit at the time the bond is fully discharged.

In upholding section 110—7(f) in *Schilb v. Kuebel* (1970), 46 Ill. 2d 538, 264 N.E.2d 377, the supreme court spoke of the section providing for a fee based upon "the amount of bail *originally* set by the court" (emphasis added) (46 Ill. 2d 538, 543, 264 N.E.2d 377, 380) and described the purpose of the fee as allowing the courts "a reasonable fee as bond costs for handling bail bonds and *offsetting the monetary amount of any loss resulting from the occasional bail jumper* where the professional bondsman under the former system might have forfeited the amount of bail." (Emphasis added.) 46 Ill. 2d 538, 544, 264 N.E.2d 377, 380.

Here, 1% of the amount of the "original" bail bond would have been the sum of $1,000 per bond which is the amount claimed by the State as the fee for the clerk. To reduce this amount of the fee, because, after the trial court judgment dismissing the charges, the court determined that bond in a smaller amount was still required, does not seem logical. The task of the clerk was, if changed at all, increased by the change in the amount of the bond. More importantly, the exposure of the county to "loss resulting from the occasional bail jumper where the professional bondsman under the former system might have for-

feited the amount of bail" would be more accurately measured by 1% of the bond deemed necessary, while the charges were pending than by 1% of the amount of the bond as reduced later. As indicated in *Schilb*, the amount of the clerk's fee is to be considered in comparison to the 10% premium previously charged by the professional bondsman. That premium was not returned to the accused upon his discharge of his responsibilities under the bond and was not reduced to such sum as to be based on the amount of bail finally required.

The holding of the majority might bring about illogical results in other cases as well. For example, if a defendant, held on a high bond, should be acquitted of a principal charge but convicted of an included much less serious offense, logic might dictate that his bond be reduced. However, if that were done, the clerk's fee on his bond would be less than it would have been had he been completely acquitted. The majority's holding would also place conflicting incentives on defendants and the State in regard to lowering of bonds in cases because of changed conditions and would create additional disputes.

With the benefit of hindsight, it appears that we might have saved additional litigation if we had resolved the question of the amount of the clerk's fee when ruling on the former appeal. In any event, I would now affirm the order of the trial court permitting the clerk to retain $1,000 of the deposit on each bond. While language in *Schilb* would indicate that the amount of the "original" bond should determine the fee, I would hold that, generally, the highest amount of the bond should determine the fee. An exception to that rule would occur when a subsequent determination was made that the bond in the highest amount was excessive. Under those circumstances, the fee should be fixed in the highest amount of bond which had been fixed properly.