2018 IL App (4th) 170401

NO. 4-17-0401

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from |
| Plaintiff-Appellee, | ) | Circuit Court of |
| v. | ) | Adams County |
| CURTIS T. LOVELACE, | ) | No. 14CF488 |
| Defendant-Appellant. | ) | |
| | ) | Honorable |
| | ) | Robert G. Hardwick, |
| | ) | Judge Presiding. |

JUSTICE STEIGMANN delivered the judgment of the court, with opinion.
Presiding Justice Harris and Justice DeArmond concurred in the judgment and opinion.

**OPINION**

¶ 1 In August 2014, an Adams County grand jury indicted defendant, Curtis T. Lovelace, for first degree murder (720 ILCS 5/9-1(a)(2) (West 2012)). Defendant's first trial ended in a mistrial because the jury could not reach a unanimous verdict.

¶ 2 Subsequently, the trial court reduced defendant's bail to $3.5 million. In June 2016, various third parties posted a $350,000 cash bond on defendant's behalf to secure his release pending trial. The trial court ordered electronic monitoring of defendant as a condition of his release.

¶ 3 In September 2016, the trial court granted defendant's motion to change venue. In March 2017, a Sangamon County jury found defendant not guilty. The trial court entered an order releasing defendant from all conditions of his bond but ordered the circuit clerk to retain

the bond "pending an assessment of applicable costs."

¶ 4         Later in March 2017, defendant filed a motion for return of bond in which he requested that the entire bond should be returned less the actual costs of electronic monitoring. In April 2017, the trial court conducted a hearing on the amount of the bond that should be refunded. Ultimately, the court ordered the circuit clerk to retain $35,000, which was 10% of the posted cash bond and which the court noted was provided by statute (725 ILCS 5/110-7(f) (West 2016)), and $5433.75 in electronic monitoring costs.

¶ 5         Defendant appeals, raising nonconstitutional and constitutional challenges. For his nonconstitutional claims, defendant argues the trial court (1) failed to exercise its discretion under the statute or (2) abused its discretion by considering inappropriate factors when it ordered the retention of 10% of the posted bond. As to his constitutional claims, defendant argues that the 10% bail bond statute (*id.*) (1) is facially unconstitutional; (2) violates due process because it did not provide for a hearing on defendant's ability to pay; (3) is unconstitutional as applied to him, based upon the Supreme Court's holding in *Nelson v. Colorado*, 581 U.S. ___, 137 S. Ct. 1249 (2017), because he was acquitted; (4) violates the equal protection clause of the federal constitution and the uniformity clause of the Illinois Constitution; and (5) is an excessive fine in violation of the eighth amendment of the United States Constitution and the Illinois Constitution's proportionate penalty provision. We disagree with all of these contentions and affirm.

¶ 6                                    I. BACKGROUND

¶ 7                        A. The State's Charges and the First Trial

¶ 8         In August 2014, an Adams County grand jury indicted defendant on the charge of first degree murder (720 ILCS 5/9-1(a)(2) (West 2012)). The trial court set defendant's bail at $5

million. Defendant was unable to post bond and remained in custody through his first trial, which occurred in February 2016. The jury was unable to reach a unanimous verdict, and the court declared a mistrial.

¶ 9                                      B. Defendant's Motion To Reduce Bail

¶ 10          Later in March 2016, defendant filed a motion to reduce bail, stating that he had exhausted all of his assets in defending the first trial. His motion added that "[i]f the Court were to set a more reasonable bond, there are friends who would post security *** sufficient to ensure his release from custody and appearance at trial." In May 2016, the trial court denied his request to reduce bail.

¶ 11          In May 2016, defendant filed a "Renewed and Unopposed Motion to Reduce Bail," explaining the State did not oppose a reduction in bond to $3.5 million. Defendant's motion stated "committed friends and supporters *** are willing and able to post the cash needed for a $3.5 million bond."

¶ 12          In June 2016, the trial court granted defendant's motion and reduced bail to $3.5 million. As a condition of release, the court ordered defendant to be confined to his home, wear an electronic monitoring device, and pay specified fees associated with electronic monitoring, with payment to come from the bond.

¶ 13          The appearance bond in the record indicates defendant paid $350,000 as 10% bond on June 6, 2016. However, the parties agree—and, as explained below, the trial court found—the cash bond was in fact paid by third parties.

¶ 14                                      C. Change of Venue and the Second Trial

¶ 15          In September 2016, defendant filed a motion for change of venue. Defendant argued extensive media coverage and his status in the community had resulted in a tainted jury

pool. The trial court granted the motion and transferred the case to Sangamon County for trial.

¶ 16      In March 2017, after a two-week trial, the jury found defendant not guilty of first degree murder. The trial court entered an order releasing defendant from all conditions of bond but ordered the bond "to be retained by the Adams County Circuit Clerk pending assessment of applicable costs."

¶ 17      D. Proceedings Related to the Return of Bond

¶ 18      1. *The Trial Court's Proposed Order*

¶ 19      Approximately two weeks after the acquittal, the court, on its own initiative, entered an order providing as follows:

> "On June 7[,] 2016, the Defendant had $350,000.00 cash bond posted for him by others, all without a bond assignment. The Defendant has been found not guilty in Sangamon County after a jury trial with that verdict coming on March 10, 2017.
>
> The bond, after applicable fees, needs to be returned. The Court proposes that the bond held by the Adams County Circuit Clerk be returned as in the proposed Order to Refund Bonds attached as Ex. "A."
>
> A hearing on this matter is scheduled for: April 19, 2017[,] at 3:00 pm at the Cass County Courthouse, Virginia, IL.
>
> If any interested party objects to the return of the bond as proposed in the attached Ex "A" they should file a written objection with the Adams County Circuit Clerk with a copy to Judge Bob Hardwick ***."

A copy of the order was sent to the State, defendant, the law firm of Beckett & Webber, and Rich Herr.

¶ 20        The proposed order noted the defendant had bond posted for him and "Beckett &
Webber attorneys[—]Urbana, IL" paid $300,000 and Rich Herr paid $50,000. The proposed
order further stated "[t]he only applicable fees to be assessed against those sums are the 10%
bond fees plus the electronic monitoring fees of $5433.75 (which have been paid)." In the order,
the court proposed the "fees/expenses" would be shared *pro rata*. Accordingly, the order
allocated $30,000 of the $35,000 bail bond fee to Beckett & Webber and $5000 to Rich Herr. In
addition, the order calculated Beckett & Webber was responsible for six-sevenths of the
electronic monitoring fees totaling $4657.50, while Rich Herr bore the remaining $776.25. The
proposed order concluded by directing the clerk to "refund the balance of the bonds," as follows:
"Beckett & Weber [*sic*] $265,342.50[,] Rich Herr $44,223.75."

¶ 21                              2. *Defendant's Motion*

¶ 22        Defendant filed a motion in March 2017 for return of the cash bond. In his
motion, defendant calculated the costs of hook-up and monitoring—previously ordered to be
paid out of his bond—to be $5696.25. As such, defendant requested the court order $344,303.75
returned to the individuals who posted the bond on defendant's behalf. His motion did not
contain any substantive arguments.

¶ 23                          3. *The Arguments of the Parties*

¶ 24        In April 2017, the trial court conducted a hearing regarding the return of the
posted cash bond. The State argued that section 110-7 of the Code of Criminal Procedure of
1963 (725 ILCS 5/110-7 (West 2016)) made clear that bond not only secures a defendant's
presence at trial but also provides a fund from which costs can be paid at the court's discretion.
The State acknowledged that the cases interpreting section 110-7(f) have held that the trial court
could return more than the statutory amount of 90% of the posted bond. However, the State

argued the proper bond fee in this case was the 10% provided by statute, in addition to the electronic monitoring costs.

¶ 25 Defendant argued the court should return the full amount of the bond and order the circuit clerk to retain only the actual electronic monitoring costs. Defendant pointed out that his prosecution had been "financially devastating" and "depleted his life's savings." Further, he asserted that, because the jury had found him not guilty, imposing a charge on him created a "constitutional problem." According to defendant, the court's retaining 10% of the bond would be "punitive" and "arbitrary" because it was being imposed upon an innocent person. Nonetheless, defendant admitted the court should charge some fee but argued the fee should only be the $5433.75 in actual costs and not $35,000 as provided by statute.

¶ 26 4. *The Trial Court's Ruling on Return of Bond*

¶ 27 The trial court first ordered the $5433.75 in electronic monitoring costs to be paid from the posted bond. The court then examined whether the circuit clerk should retain a 10% bail bond fee, concluded that the circuit clerk should, and explained, as follows:

> "The statute is pretty clear, the purpose is to insure compliance with conditions of bond, but also to help defray expenses and those are in the case decisions that have come down. The court does have authority to order less than ten percent of the bond fee to be held and as [the State] said, there is not a lot of cases out there. There is people—there are cases that have talked about ten percent whether it can be withheld or not, but nothing that really addresses this in any kind of detail. Actually, I thought there would be more cases [that] I could find. And I don't know if you looked, [defense counsel], but if you had found a lot of cases, I know you well enough you would have been talking to me about them. I have been in

this business for close to forty years. I don't know that I have ever seen less than 10 percent in bond fee withheld. That's one of the ways the [circuit] clerks basically fund their office. It wasn't the [circuit] [c]lerk's office that indicted Mr. Lovelace, it was the grand jury. We have had four weeks of trial, two weeks in Adams County, two weeks in Sangamon County. We have had the additional expenses of Sangamon County on a change of venue which was on the defendant's motion. Turned out to be a good expense since you got a not guilty out of that, but in any event, I am going to order that the bond, the $350,000 be—I am basically going to order that the proposed order that I sent out last month that I am going to sign that. In other words, $5,433.75 is going to be withheld for electronic monitoring expenses and there will be a 10 percent bond fee of $35,000."

¶ 28 Defendant appeals, raising nonconstitutional and constitutional challenges. For his nonconstitutional claims, Defendant argues the trial court (1) failed to exercise its discretion under the statute or (2) abused its discretion by considering inappropriate factors when it ordered the retention of 10% of the posted bond. As to his constitutional claims, defendant argues that the 10% bail bond statute (725 ILCS 5/110-7(f) (West 2016)) (1) is facially unconstitutional; (2) violates due process because it did not provide for a hearing on defendant's ability to pay; (3) is unconstitutional as applied to him, based upon the Supreme Court's holding in *Nelson*, 581 U.S. ___, 137 S. Ct. 1249, because he was acquitted; (4) violates the equal protection clause of the federal constitution and the uniformity clause of the Illinois Constitution; and (5) is an excessive fine in violation of the eighth amendment of the United States Constitution and the Illinois Constitution's proportionate penalty provision. We disagree with all of these contentions

and affirm.

¶ 29                              II. ANALYSIS

¶ 30        Defendant's arguments on appeal fall into two categories: (1) constitutional challenges to the bail bond statute and (2) nonconstitutional challenges. Consistent with directions from the Illinois Supreme Court regarding how lower courts should handle cases in which both constitutional and nonconstitutional claims are raised, we will first address defendant's nonconstitutional claims. See *People v. Chairez*, 2018 IL 121417, ¶ 13 (courts should "decide constitutional questions only to the extent required by the issues in the case" (internal quotational marks omitted)); see also *In re Dustyn W.*, 2017 IL App (4th) 170103, ¶ 24, 81 N.E.3d 88 ("Only if we conclude that the trial court did not abuse its discretion by imposing the probationary condition at issue should we then consider whether this condition violated respondent's constitutional rights.").

¶ 31                 A. The Trial Court Did Not Abuse Its Discretion

¶ 32        Defendant argues the trial court erred by ordering the circuit clerk to retain a 10% bail bond fee. He contends the court abdicated its discretion because it simply ruled the way it always had for the past 40 years. Additionally, defendant asserts the court refused to consider "the only relevant factor"—defendant's ability to pay—and instead considered impermissible ones, such as defendant's seeking a change in venue and maintaining his innocence. Last, defendant claims the trial court abused its discretion by ordering the clerk to retain the 10% fee in addition to the $5433.75 of actual expenses.

¶ 33        Section 110-7(f) "grants a trial court the discretionary authority to return more than 90% of a bail deposit under appropriate circumstances." *People v. Fox*, 130 Ill. App. 3d 795, 797, 475 N.E.2d 1, 2 (1985). The abuse-of-discretion standard of review is highly

deferential. *People v. Peterson*, 2017 IL 120331, ¶ 125. A reviewing court will reverse only when "the trial court's decision is arbitrary, fanciful, or unreasonable to the degree that no reasonable person would agree with it." (Internal quotation marks omitted.) *Id.* However, a trial court errs if it fails to understand it has discretion to act or wholly fails to exercise its discretion. *Fox*, 130 Ill. App. 3d at 797; *People v. Queen*, 56 Ill. 2d 560, 565, 310 N.E.2d 166, 169 (1974).

¶ 34    In reaching its decision, the trial court explicitly acknowledged its authority to order an amount less than 10% of the posted bond be retained as costs. The court also properly understood the purpose of the bail bond fee when it stated it was for the purpose of defraying the costs of administration. We agree with the State that the court's statement, that it "ha[d] been in this business for close to forty years" and "[didn't] know that [it] ha[d] ever seen less than 10 percent in bond fee withheld," was merely a personal observation that did not affect its exercise of discretion. See *People v. Steppan*, 105 Ill. 2d 310, 323, 473 N.E.2d 1300, 1307 (1985) ("The fact that the sentencing judge added some personal observations before imposing sentence, while not to be encouraged, is of no consequence.").

¶ 35    Additionally, the trial court did not act improperly when it considered the length of the proceedings and change in venue. The court clearly believed having two trials in two different counties increased the costs of administering the bail bond system, thereby justifying retention of the 10% amount set by statute. Although we do not necessarily concur with the trial court's reasoning (no evidence was presented at the hearing or on appeal as to what the actual costs of administration of the bail bond system are or what factors impact that administration), the court's ruling was not, as defendant suggests, a penalty for defendant's exercising his right to change venue and his acquittal. We conclude the trial court did not act arbitrarily.

¶ 36    We are especially disinclined to find an abuse of discretion in this situation in

which the trial court made clear it knew it had discretion and attempted to set forth its reasoning for how it exercised that discretion. We encourage trial courts to thoroughly set forth the bases for their rulings because their doing so is a great assistance to the reviewing courts.

¶ 37 Finally, defendant forfeited any argument that the trial court abused its discretion by ordering the circuit clerk to retain the 10% bail bond fee in addition to the actual costs of electronic monitoring. Defendant agreed with the court that electronic monitoring costs should be paid out of the bond, as the court had previously ordered. Defendant never argued the electronic monitoring costs should be deducted from the 10% bail bond fee or that the trial court was limited in assessing all costs only up to 10% of the posted bail bond. Therefore, these arguments are forfeited. See *People v. Pendleton*, 223 Ill. 2d 458, 475, 861 N.E.2d 999, 1009 (2006).

¶ 38                                    B. Defendant's Constitutional Claims

¶ 39 Because the trial court did not abuse its discretion, we need to address defendant's arguments that the bail bond statute is unconstitutional. Regarding each of his constitutional claims, defendant first argues the statute is unconstitutional on its face and then argues in the alternative that the statute is unconstitutional as applied to him. Because we find the bail bond statute constitutional as applied to defendant, his facial challenges necessarily fail. See *In re M.A.*, 2015 IL 118049, ¶ 49, 43 N.E.3d 86 ("Because the Violent Offender Act does not violate procedural due process as applied to M.A., it follows that the Act also is not facially unconstitutional."). We address each argument in turn.

¶ 40                                    1. *The Statutory Language at Issue*

¶ 41 Defendant challenges the constitutionality of the 10% bail bond statute. 725 ILCS 5/110-7 (West 2016). Specifically, defendant challenges subsection (f), which states, in relevant

part, the following:

> "When the conditions of the bail bond have been performed and the accused has been discharged from all obligations in the cause[,] the clerk of the court shall return to the accused or to the defendant's designee by an assignment executed at the time the bail amount is deposited, unless the court orders otherwise, 90% of the sum which had been deposited and shall retain as bail bond costs 10% of the amount deposited. However, in no event shall the amount retained by the clerk as bail bond costs be less than $5. Notwithstanding the foregoing, in counties with a population of 3,000,000 or more, in no event shall the amount retained by the clerk as bail bond costs exceed $100." *Id*. § 110-7(f).

¶ 42       In 1969, the legislature amended section 110-7(f) by adding the phrase "unless the court orders otherwise." Pub. Act 76-1195, § 1 (eff. Sept. 4, 1969). In 2015, the legislature amended section 110-7(f) to include the final sentence quoted above. Pub. Act 99-412, § 5 (eff. Jan. 1, 2016) (amending 725 ILCS 5/110-7(f)). With these exceptions, the statute is unchanged from its original form as enacted in 1963.

¶ 43                     2. *Defendant's Ability To Pay*

¶ 44       Defendant first argues the bail bond statute is unconstitutional as applied to him because the trial court did not hold a hearing or consider his inability to pay the bail bond fee. According to defendant, the Illinois Supreme Court's holding in *People v. Cook*, 81 Ill. 2d 176, 407 N.E.2d 56 (1980), as well as later cases following *Cook*, requires a court to hold a hearing to consider a defendant's ability to pay before ordering an indigent defendant to reimburse the costs of his prosecution. Defendant asserts he was found indigent at a prior bail bond hearing and,

- 11 -

therefore, the court's failure to hold and the statute's failure to require a hearing on his ability to pay violated his procedural due process rights. We disagree.

¶ 45    In *Cook*, the Illinois Supreme Court examined the constitutionality of former section 110-7(g), which provided, " 'Whenever a defendant who has been admitted to bail utilizes the services of a public defender or other appointed counsel,' " the bond may be used to reimburse the county for the legal services. *Cook*, 81 Ill. 2d at 180 (quoting Ill. Rev. Stat. 1979, ch. 38, ¶ 110-7(g)). The court found the statute required only those indigent defendants who posted bail to pay for legal services while other indigent defendants who received the same services did not, simply because they were released on personal recognizance or otherwise did not post bail. *Id.* at 181. The court concluded there was no rational basis for the distinction because the posting of bail did not *per se* mean a defendant had the ability to pay. *Id.* at 183. Therefore, the court held that former section 110-7(g) violated equal protection. *Id.* The court further held that "[a] summary decision which orders reimbursement without affording a hearing with opportunity to present evidence and be heard acts to violate an indigent defendant's right to procedural due process." *Id.* at 186. (We note that section 110-7(g) was repealed and replaced by section 113-3.1, which was enacted to address the constitutional problems in *Cook*. See Pub. Act 82-708 (eff. July 1, 1982); Pub. Act 83-336 (eff. Sept. 14, 1983).)

¶ 46    Contrary to defendant's claim that former section 110-7(g) "is indistinguishable for constitutionality purposes," the bail bond statute does not suffer from the problems discussed in *Cook*. Most significantly, section 110-7(f) does not distinguish between one class of indigent defendants and another. In fact, the plain language of the statute makes clear it does not distinguish between any defendants at all. Instead, *all defendants*, wealthy or poor, found guilty or not guilty, receiving appointed counsel or not, pay the same 10% bail bond fee pursuant to

section 110-7 when they post a bail bond. See *Schilb v. Kuebel*, 404 U.S. 357, 370-71 (1971).

¶ 47 Moreover, the statute and the bail bond scheme as a whole provide sufficient due process to defendants. When posting a 10% bail bond, the bond form must "include a written notice to such person who has provided the defendant with the money for the posting of bail indicating that bail may be used to pay costs." 725 ILCS 5/110-7(a) (West 2016). Section 110-7(f) explicitly provides the clerk shall retain a 10% bail bond fee "unless the court orders otherwise." *Id.* § 110-7(f). Courts have held this provides the trial court with discretion to retain less than 10% as provided by statute. *Fox*, 130 Ill. App. 3d at 797. Further, defendants are permitted to petition the court to reduce bail at any time. 725 ILCS 5/110-6 (West 2016). Accordingly, the statute permits defendants to petition the court for return of a different sum based on their ability to pay. And, as other courts have recognized, ability to pay is but one of the factors a court may consider in setting the amount of bail in the first instance. *Id.* § 110-5; *Platt v. Brown*, No. 16 C 3898, 2017 WL 1196921, *4 (N.D. Ill. Mar. 31, 2017); see also *Payton v. County of Carroll*, 473 F.3d 845, 851-52 (7th Cir. 2007) (holding ability to petition court for lower bail was one factor which indicated the charging of a bail bond fee did not violate due process). Therefore, the bail bond statute does not violate equal protection or procedural due process under *Cook*, and the trial court was not required to consider defendant's ability to pay when deciding how much of defendant's cash bail bond to refund.

¶ 48 Even assuming due process did require such a hearing, defendant was afforded that opportunity. In this case, defendant successfully petitioned the trial court to lower his bail based on his indigence and his representations that third parties had the funds to post bond. After the jury returned a not guilty verdict, the court provided notice of a hearing on the issue of the amount of the bond to be returned and invited written submissions from any interested person.

Defendant submitted a motion for return of the bail bond but did not raise any of the arguments he now raises in this appeal. At the hearing, defendant was present and had the opportunity to present evidence. To the extent defendant claims he was denied the opportunity to present evidence, he failed to request an evidentiary hearing. Moreover, defendant did argue that the case had been "financially devastating" and "depleted his life savings." Accordingly, defendant had the opportunity to and did raise the issue of his ability to pay. Accordingly, he was not denied due process.

¶ 49                              3. *Retention of the Bond Fee Despite Acquittal*

¶ 50            Defendant next argues section 110-7(f) is unconstitutional as applied to him because he was acquitted. In essence, defendant asserts the bail bond fee amounts to a punishment on an acquitted person. The State counters that the United States Supreme Court rejected defendant's arguments in *Schilb v. Kuebel*, 404 U.S. 357 (1971). However, defendant claims the United States Supreme Court's recent holding in *Nelson*, 581 U.S. ___, 137 S. Ct. 1249, essentially overruled *Schilb*. We disagree and find *Nelson* distinguishable.

¶ 51                                a. The *Schilb* Cases

¶ 52            Defendant's argument has been expressly rejected by both the Illinois Supreme Court and the Supreme Court of the United States. In *Schilb v. Kuebel*, 46 Ill. 2d 538, 264 N.E.2d 377 (1970) (*Schilb I*), the plaintiffs argued section 110-7(f) violated the equal protection and due process clauses of the federal constitution and related provisions of the Illinois Constitution. *Id.* at 542. Specifically, the plaintiffs claimed the 10% bail bond fee violated equal protection because it was only imposed when defendants posted a 10% cash bail under section 110-7(f) but not when they were released on recognizance or when they posted the full amount of bail in cash or other securities under section 110-8. *Id.* The plaintiffs further contended the

bail bond fee constituted an assessment of costs against defendants found not guilty. *Id.* The Illinois Supreme Court explained the legislature enacted the bail bond scheme to return control of the bail bond system to the courts. *Id.* at 543-44. Previously, professional bail bondsmen charged defendants a 10% fee and pocketed the full amount regardless of compliance, but the actual judgments on forfeitures paid by professional bondsmen amounted to only 1% of the bonds written. *Id.* at 544. Section 110-7(f) permitted the return of 90% of the bond deposited upon compliance, thus encouraging compliance. *Id.* at 546. The 10% fee (1% of the total bail) was retained as costs of administering the 10% bail bond system. *Id.* at 544, 548.

¶ 53    The court found that defendants had three methods of securing release and those who voluntarily choose to use the 10% system "constitute[d] a separate class under the legislative plan and purpose as already indicated." *Id.* at 548. The court stated that "we know of no law or constitutional provision which would preclude [criminal defendants] being required to pay a reasonable amount for the privilege extended to those who elect to come into this class. The requirement of a fee to help defray the cost of administrative services in the courts is a traditional and basic concept recognized as valid by this court." *Id.* The court further noted the "bond costs *** are chargeable regardless of what subsequently occurs in the prosecution of the case and regardless of the guilt or innocence of the accused." *Id.* at 551-52. In reaching this conclusion, the court determined the bail bond fee was not a cost of prosecution and conceded court costs could not be assessed against an acquitted defendant. *Id.* at 552. However, that concession "has no bearing whatever on bond costs and the retention of a percentage of such costs is not tantamount to the assessment of court costs against a discharged defendant." *Id.* Accordingly, the fee charged in section 110-7(f) was supported by a rational basis and did not violate equal protection or due process. *Id.*

¶ 54        Subsequently, the United States Supreme Court granted *certiorari* and affirmed. *Schilb v. Kuebel*, 404 U.S. 357 (1971) (*Schilb II*). The plaintiffs made the same arguments to that Court that (1) disparate treatment depended on the method of securing release and (2) the fee constituted a penalty on an acquitted person. *Id.* at 365-66. The Court noted the statute "smacks of administrative detail and of procedure and is hardly to be classified as a 'fundamental' right or as based upon any suspect criterion" and, thus, any rational basis for the law would support it. *Id.* at 365. The Court examined the legislative history of the bail bond scheme and noted the purpose of the bail bond fee was to offset the costs of administering the bail bond system. *Id.* at 360-68. The Court explained that, because "with a recognizance, there is nothing the State holds for safekeeping, with resulting responsibility and additional paperwork," there is a rational basis for not charging those defendants a fee. *Id.* at 367. "Further, the State's protection against the expenses that inevitably are incurred when bail is jumped is greater when 100% cash or securities or real estate is deposited or obligated than when only 10% of the bail amount is advanced." *Id.* Thus, the Court concluded that the statute had a rational relationship to the State's legitimate interest in defraying the expenses of administering the bail bond system as a whole. *Id.* at 367-68, 370-72.

¶ 55        Additionally, the Supreme Court explained that the bail bond fee statute is not "a vehicle for the imposition of costs of prosecution." *Id.* at 370. Instead, the "bail bond costs" "is what that description implies, namely, an administrative cost imposed upon all those, guilty and innocent alike, who seek the benefit of § 110-7." *Id.* at 370-71. The Court noted its "conclusion is supported by the presence of the long-established Illinois rule against the imposition of costs of prosecution upon an acquittal or discharged criminal defendant, *Wells v. McCullock*, 13 Ill. 606 (1852), and by the Illinois court's own determination [in *Schilb I*] that the charge under

- 16 -

§ 110-7(f) is an administrative fee and not a cost of prosecution imposed *** only upon the convicted defendant." *Id.* at 371.

¶ 56                                   b. *Nelson v. Colorado*

¶ 57          In *Nelson*, the Supreme Court considered whether "the State [is] obliged to refund fees, court costs, and restitution exacted from the defendant upon, *and as a consequence of*, the conviction" when that conviction is invalidated by a reviewing court and no retrial will occur. (Emphasis added.) *Nelson*, 581 U.S. at ___, 137 S. Ct. at 1252. The petitioners in *Nelson* were convicted and sentenced to pay costs, fees, and restitution pursuant to various sentencing statutes. *Id.* at ___, 137 S. Ct. at 1252-53. On direct appeal, their convictions were vacated. *Id.* at ___, 137 S. Ct. at 1253. Petitioners sought return of the amounts paid. *Id.* at ___, 137 S. Ct. at 1253. The only avenue for petitioners to regain the amounts paid was pursuant to a statute requiring them to prove by clear and convincing evidence they were actually innocent. *Id.* at ___, 137 S. Ct. at 1254. The Colorado Supreme Court found the statute offered sufficient procedure and denied petitioners' claims. *Id.* at ___, 137 S. Ct. at 1254.

¶ 58          The United States Supreme Court reversed, finding the petitioners' procedural due process rights were violated pursuant to the balancing test in *Mathews v. Eldridge*, 424 U.S. 319 (1976). *Nelson*, 581 U.S. at ___, 137 S. Ct. at 1255-58. The Court made clear "[t]he sole legal basis for these assessments was the fact of [petitioners'] convictions. Absent those convictions, Colorado would have no legal right to exact and retain petitioners' funds." *Id.* at ___, 137 S. Ct. at 1253. It stated "Colorado may not retain funds taken from [petitioners] *solely because of their now-invalidated convictions ***.*" (Emphasis added.) *Id.* at ___, 137 S. Ct. at 1256. The Court concluded: "To comport with due process, a State may not impose anything more than minimal procedures on the refund of exactions *dependent upon a conviction*

- 17 -

subsequently invalidated." (Emphasis added.) *Id.* at ___, 137 S. Ct. at 1258.

¶ 59                                                    c. Analysis

¶ 60          *Nelson* is plainly distinguishable and has no bearing on this case. In *Nelson*, the Court was abundantly clear it was addressing the ability of a state to retain funds from a defendant *as a consequence of a conviction*. Here, the bail bond fee is not related in any way to a defendant's being found guilty or not guilty. Instead, the fee is "an administrative cost imposed upon all those, guilty and innocent alike, who seek the benefit of § 110-7." *Schilb II*, 404 U.S. at 370-71. The purpose of the bond is to ensure defendant's appearance, and the bond is returned "[w]hen the conditions of the bail bond have been performed and the accused has been discharged from all obligations in the cause." 725 ILCS 5/110-7(f) (West 2016). By the statute's plain language, the fee is retained as long as the defendant complies with its terms and is discharged when the case is over. In other words, the bail bond fee is not assessed "as a consequence of [a] conviction" (*Nelson*, 581 U.S. at ___, 137 S. Ct. at 1252), and therefore, the Supreme Court's ruling in *Nelson* did not have any effect upon its holding in *Schilb*.

¶ 61          Both defendant and the State address the three-factored test for procedural due process in *Mathews*. The State urges this court to follow the reasoning of a federal district court in *Platt* , 2017 WL 1196921, and the Seventh Circuit's subsequent affirmation in *Platt v. Brown*, 872 F.3d 848 (7th Cir. 2017). Defendant correctly points out that federal decisions are merely persuasive authority and not binding on this court. See *Travelers Insurance Co. v. Eljer Manufacturing, Inc.*, 197 Ill. 2d 278, 302, 757 N.E.2d 481, 496 (2001). Further, defendant criticizes the district court's decision because it was issued before the Supreme Court decided *Nelson*. Defendant also criticizes the Seventh Circuit's decision because it did not refer to *Nelson* or conduct the *Mathews* balancing test despite the Seventh Circuit's opinion being issued after

*Nelson*.

¶ 62        As explained above, we need not consider *Mathews* because *Nelson* has no application to this case. In addition, we note that we are persuaded by the analyses in the decisions of the federal courts in *Platt*. It is of no moment that the Seventh Circuit did not address *Nelson* because *Nelson* has no bearing on the constitutionality of section 110-7(f).

¶ 63        We note that similar bail bond fee statutes have been upheld by other courts. See *Board of County Commissioners v. Farris*, 342 N.E.2d 642, 645 (Ind. Ct. App. 1976) (upholding constitutionality of 10% bail bond fee statute); *Estate of Payne v. Grant County Court*, 508 N.E.2d 1331, 1334-35 (Ind. Ct. App. 1987) (same); *Buckland v. County of Montgomery*, 812 F.2d 146, 148-49 (3d Cir. 1987) (finding statute that allowed each county to collect a "reasonable" fee for defendants who post 10% bail constitutional when counties retained as much as 3% of total bail amount); *Broussard v. Parish of Orleans*, 318 F.3d 644, 656-57 (5th Cir. 2003) (holding statutory fee over and above amount of bail constitutional, including under *Mathews*); *Enlow v. Tishomingo County*, 45 F.3d 885, 889 (5th Cir. 1995) (upholding district court's analysis of Mississippi's 2% bail bond fee under *Mathews*). See also *Payton*, 473 F.3d 845 (upholding fee imposed by sheriffs on arrestees who post bail bond at jail under *Mathews*).

¶ 64                    4. *The Uniformity Clause and Equal Protection*

¶ 65        Defendant's equal protection claims have two components. First, defendant argues the bail bond statute treats defendants who bond out under section 110-7(f) in Cook County differently than in all other counties without a rational basis for doing so, thereby violating the uniformity clause of the Illinois Constitution. Second, he contends that the bail bond statute violates the equal protection clauses of the Illinois and United States Constitutions because it impermissibly distinguishes between defendants who post bond under section 110-7(f)

and those who are released on recognizance or otherwise do not post bond. Because defendant's challenges rest on different premises, we address each in turn.

¶ 66                                        a. Uniformity Clause

¶ 67        Defendant argues the bail bond statute violates the uniformity clause of the Illinois Constitution because it caps the bail bond fee at $100 for defendants in counties with a population of over 3 million, while all other counties are permitted to retain 10% of the posted bail bond (1% of the total bond amount). Because defendant posted bond in Adams County, he was required to pay a bail bond fee of $35,000, whereas an identical defendant in Cook County would have only paid $100. Defendant contends there is no rational basis for this distinction. We disagree.

¶ 68        The uniformity clause of the Illinois Constitution provides that "[i]n any law classifying the subjects or objects of non-property taxes or fees, the classes shall be reasonable and the subjects and objects within each class shall be taxed uniformly." Ill. Const. 1970, art. IX, § 2. "A plaintiff challenging such a classification has the burden of showing that it is arbitrary or unreasonable; if a state of facts can be reasonably conceived that would sustain it, the classification must be upheld." *Geja's Cafe v. Metropolitan Pier & Exposition Authority*, 153 Ill. 2d 239, 248, 606 N.E.2d 1212, 1216 (1992). The uniformity clause "was intended to encompass the equal protection clause and add to it even more limitations on government." *Id.* at 247. Therefore, "[i]f a tax is constitutional under the uniformity clause, it inherently fulfills the requirements of the equal protection clause." *Id.*

¶ 69        The simplest explanation for the disparate treatment between counties with a population of over 3 million and those without is that the legislature believed the bail bond system could be adequately funded in much larger counties by other sources. We will take

judicial notice that Cook County is the only county in this state that has a population of over 3 million, and it is certainly reasonable to assume that Cook County has more sources of general revenue that can be used to administer the bail bond system. Moreover, the legislature could have reasonably believed that a $100 fee is sufficient to fund the bail bond system in larger counties because, presumably, many more people post bail in those counties as opposed to smaller ones. Whatever the reason, defendant has failed to meet his burden of demonstrating the classification is unreasonable.

¶ 70    Because we find defendant has failed under the uniformity clause, his claim necessarily fails under the equal protection clause. *Id.* Although we do not need to, we will address defendant's other equal protection claims because they rest on a different set of classifications.

¶ 71                               b. Equal Protection

¶ 72    Defendant argues the reasoning in *People v. Cook* with regard to former section 110-7(g) applies with equal force to section 110-7(f). He contends the court in *Cook* found that section 110-7(g) imposed unequal treatment because the statute did not subject "indigents who have been released on their own recognizance or who have been unable or unwilling to post bail" to the same potential for reimbursement as those who had posted bond. *Cook*, 81 Ill. 2d at 181. Defendant argues "[l]ikewise under 110-7(f), defendants who were released on their own recognizance or were unable or unwilling to post bail were not subjected to the 110-7(f) penalty."

¶ 73    To begin, as explained in detail below, the bail bond fee in section 110-7(f) is not a penalty. More importantly, however, defendant's arguments were directly addressed and thoroughly rejected by the Illinois Supreme Court and United States Supreme Court in the *Schilb*

cases. We adopt the previous analysis of the *Schilb* cases as additional reasoning in support of our conclusion that section 110-7(f) does not violate equal protection. *Supra* ¶¶ 52-55.

¶ 74    As we explained earlier, *Cook* and its progeny do not apply to this case. Defendant fails to provide any other authority to suggest that either the Illinois Supreme Court or the United States Supreme Court would reach a different result, much less any authority which would call into question the reasoning or holdings of the *Schilb* cases. Indeed, other courts that have considered similar bail bond fee statutes since the Supreme Court's ruling in *Schilb* have upheld them. See *supra* ¶ 63.

¶ 75    Most recently, the Seventh Circuit reviewed section 110-7(f) and found it passes constitutional muster. In *Platt*, in addressing the plaintiffs' equal protection argument, the court noted "there is no classification to challenge; everyone within the 10% bail bond system is treated exactly the same." *Platt*, 872 F.3d at 852. The plaintiffs in *Platt* argued the bail bond fee violated equal protection because defendants with very high bail paid significantly more than others. *Id.* at 851. The Seventh Circuit explained that although charging a percentage fee necessarily meant some defendants would pay more than others, any difference in outcome was a disparate impact, not disparate treatment, and therefore "is not a permissible basis for finding a denial of equal protection." (Internal quotation marks omitted.) *Id.*

¶ 76    Further, the court concluded that the bail bond statute was rationally related to multiple legitimate government interests. *Id.* at 853. "First, the Fee incentivizes criminal defendants to avail themselves of the full deposit bail bond system. Under the 10% system, the State bears 90% of the risk that a criminal defendant might jump bail. The government maintains a legitimate interest in reducing its exposure to this liability." *Id.* Additionally, the flat percentage fee is simple and easy to administer. *Id.* Finally, the fee "defrays the costs of

administering the bail bond system: both the administrative costs as well as the costs of those who jump bail." *Id.* By recouping some of its costs, the State is able to "ensure the stability of an affordable bond service run by the courts rather than a for-profit entity." *Id.*

¶ 77　　　　As we earlier noted, we are persuaded by the analysis in *Platt* and adopt its reasoning. The bail bond statute does not distinguish between any class of defendants. Instead, all defendants who opt to post 10% bond must pay the same percentage fee. Further, any difference in treatment between defendants who choose to post a percentage of their bail, as opposed to posting the full amount or being released on recognizance, is rationally related to the legitimate government interest in defraying the costs of administering the bail bond system. *Schilb II*, 404 U.S. at 363 n.8; *Platt*, 872 F.3d at 853. Accordingly, section 110-7(f) does not violate equal protection.

¶ 78　　　　　　　　5. *Defendant's Remaining Constitutional Challenges*

¶ 79　　　　Defendant's last constitutional argument is that the bail bond statute is unconstitutional as applied to him because it imposes a penalty on an acquitted person in violation of the eighth amendment's excessive fines clause, as well as the excessive penalties and proportionate penalties clauses of the Illinois Constitution. The State responds that the Supreme Court in *Schilb* found the bail bond statute imposes a fee, rather than a fine, and therefore the eighth amendment and proportionate penalty clauses do not apply. Defendant counters that "decades['] worth of nuanced Illinois court analysis on the distinction between fines and fees" mandates a different result. We disagree.

¶ 80　　　　Although the *Schilb* cases were decided before many of the cases relied upon by defendant in his brief, the *Schilb* holdings are no less binding on this court. No subsequent case has called into question the holdings or reasoning of the *Schilb* cases, and the text of the statute is

unchanged. Accordingly, we hold the bail bond fee in section 110-7(f) is (1) an administrative fee and (2) not a penalty; accordingly, the eighth amendment and proportionate penalties clause do not apply.

¶ 81　　　　Though we need not address defendant's claims further, we do so to make clear the bail bond fee in section 110-7(f) is exactly that, a fee, and the *Schilb* cases are in line with Illinois's fines and fees jurisprudence.

¶ 82　　　　　　　　　　a. Distinguishing Between a Fine and a Fee

¶ 83　　　　 "A fee is defined as a charge that seeks to recoup expenses incurred by the state, or to compensate the state for some expenditure incurred in prosecuting the defendant. [Citation.] A fine, however, is punitive in nature and is a pecuniary punishment imposed as part of a sentence on a person convicted of a criminal offense." (Internal quotation marks omitted.) *People v. Graves*, 235 Ill. 2d 244, 250, 919 N.E.2d 906, 909 (2009). "[T]he most important factor is whether the charge seeks to compensate the state for any costs incurred as the result of prosecuting the defendant." *Id.* "This is the *central* characteristic which separates a fee from a fine. A charge is a fee if and only if it is intended to reimburse the state for some cost incurred in defendant's prosecution. [Citations.]" (Emphasis in original.) *People v. Jones*, 223 Ill. 2d 569, 600, 861 N.E.2d 967, 986 (2006). "Other factors to consider are whether the charge is only imposed after conviction and to whom the payment is made." *Graves*, 235 Ill. 2d at 251. Further, the legislature's label of a charge as a fee is strong, but not conclusive, evidence that the charge is in fact a fee and not a fine. *Id.* at 250.

¶ 84　　　　　　　　　　　　b. Analysis

¶ 85　　　　Here, legislative history makes clear the bail bond fee is for the purpose of recovering the costs of administering the bail bond system. *Schilb II*, 404 U.S. at 363 n.8 (citing

Ill. Ann. Stat., ch. 38, art. 110, Committee Comments-1963, at 273, 275-76 (art. 110 introduction), 293 (discussing section 110-7), 307 (discussing section 110-8) (Smith-Hurd 1970)); see also 725 Ann. ILCS 5/110, Committee Comments-1963, at 394 (Smith-Hurd 2006) ("deposit retained by the county will offset in monetary amount the costs of handling bail bonds *** and any loss resulting from the occasional bail jumper"); *id.* § 110-7, at 437 ("deposit retained by the clerk is to cover costs of handling bail bonds and deposits"); *id.* § 110-8, at 456 ("[Article 110] is designed *** to assure to the counties in every case a reasonable amount *** to cover the cost of time and paper-work in handling bail cases."). Further, the fee is not imposed after conviction but instead after the terms of the bond have been complied with and the defendant's case is over. 725 ILCS 5/110-7(f) (West 2016). Clearly, then, the bail bond fee is not a "fine" because it is not imposed on a defendant as a punishment in conjunction with a conviction.

¶ 86    Moreover, the bail bond fee is not intended to reimburse the State for some cost incurred in defendant's prosecution because it is not related to defendant's prosecution at all. *Schilb I*, 46 Ill. 2d at 551-52; *Schilb II*, 404 U.S. at 370. Instead, it is a charge imposed on those who elect to use the benefit of posting 10% bond under section 110-7 to help defray the costs of the bail bond system. *Schilb I*, 46 Ill. 2d at 551-52; *Schilb II*, 404 U.S. at 370. A "fee" is also defined as "a charge for labor or services, especially professional services." *People v. White*, 333 Ill. App. 3d 777, 781, 776 N.E.2d 836, 839 (2002) (citing Black's Law Dictionary 629 (7th ed. 1999)). This definition clearly encompasses the bail bond fee at issue which is best characterized as a charge for a particular service.

¶ 87    We find further support for this determination in section 113-3.1 of the Code of Criminal Procedure of 1963 (725 ILCS 5/113-3.1 (West 2016)). Much like the bail bond statute,

section 113-3.1 provides the state with a method to recoup costs associated with providing a service to defendants. See *People v. Love*, 177 Ill. 2d 550, 560-63, 687 N.E.2d 32, 37-38 (1997) (discussing *Cook* and characterizing charges under section 113-3.1 as "reimbursement for services"). Additionally, defendants are not required to avail themselves of the benefits of court-appointed counsel; instead, that section applies when defendants voluntarily seek appointed counsel. Further, trial courts have discretion to determine if assessing fees for court-appointed counsel is appropriate and, if so, the amount. See *People v. Ames*, 2012 IL App (4th) 110513, ¶¶ 53-55, 65, 978 N.E.2d 1119 (setting forth procedure for trial courts to advise defendants who state they desire counsel but have been unable to hire private counsel of the possibility of assessing fees for appointed counsel under section 113-3.1). Under both statutes, the amount of the fee assessed, if any, is determined only at the conclusion of a defendant's case.

¶ 88          Moreover, neither statute distinguishes between convicted and acquitted defendants. Indeed, this court has upheld the application of section 113-3.1 to acquitted defendants. In *People v. Kelleher*, defendant was found not guilty after a bench trial, but the trial court ordered defendant to pay $440 for court-appointed counsel's services, with payment coming from defendant's cash bond. *People v. Kelleher*, 116 Ill. App. 3d 186, 187, 452 N.E.2d 143, 144 (1983).

¶ 89          Defendant appealed, claiming section 113-3.1 violated due process because it applied to acquitted as well as convicted defendants. The defendant in *Kelleher* also contended that the statute failed to provide notice at the time a cash bond was posted that such bond could be used for attorney fees. *Id.* This court rejected both claims and found section 113-3.1 passed constitutional muster. *Id.* at 191. We observed that "[a] nonindigent, although acquitted, is ordinarily required, without reimbursement by the State, to pay for counsel. To require an

indigent, although acquitted, to reimburse the county, to the extent he is able, for the expense of furnished counsel, tends to put indigents and nonindigents who are acquitted, on the same basis and is consistent with due process." *Id.* at 189. This court relied on the United States Supreme Court's reasoning in *Schilb* to conclude that, like the 10% bail bond fee, the reimbursement of fees for appointed counsel was not a "cost of prosecution" because the State was not required to reimburse defendants who hired private counsel. *Id.* at 189-90.

¶ 90          The court's reasoning in *Kelleher* is persuasive. Arguably, an indigent defendant who has been acquitted received even better service from his court-appointed counsel than a defendant who has been convicted. Requiring an acquitted defendant to reimburse the State for appointed counsel is not unconstitutional and does not constitute a fine or penalty. Over the last three decades, case law recognizing the constitutionality of section 113-3.1 has long been settled. If defendant's arguments that the bail bond fee is actually a fine had merit, then the constitutionality of section 113-3.1 would not be settled law.

¶ 91          Defendant also contends the bail bond fee is either a "tax or fine" because it does not reimburse the State for any specific charge incurred and instead relates to "general revenue." See *Crocker v. Finley*, 99 Ill. 2d 444, 452, 459 N.E.2d 1346, 1350 (1984) ("a charge having no relation to the services rendered, assessed to provide general revenue rather than compensation, is a tax"). Based on the bail bond statute's legislative history and the conclusions in the *Schilb* cases, we conclude that the bail bond fee serves both as compensation to the county for the administration of the particular defendant's bail in each case and as revenue for the funding of the bail bond system as a whole. See, *e.g.*, 725 ILCS Ann. 5/110, Committee Comments-1963, at 394 (Smith-Hurd 2006); *supra* ¶ 85.

¶ 92          Interesting though this question is, ultimately, it makes no difference whether the

bail bond fee is a "fee" or a "tax." Because the bail bond fee is not imposed as a punishment or as a result of a conviction, it is not a "fine," and the eighth amendment and proportionate penalties clause do not apply.

¶ 93                                    III. CONCLUSION

¶ 94        For the reasons stated, we affirm the trial court's judgment. As part of our judgment, we award the State its $75 statutory assessment against defendant as costs of this appeal. 55 ILCS 5/4-2002 (West 2016).

¶ 95        Affirmed.