**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

2022 IL App (3d) 200140-U

Order filed July 14, 2022

_____

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

2022

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of the 10th Judicial Circuit, Tazewell County, Illinois |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | Appeal No. 3-20-0140 Circuit No. 18-CF-183 |
| DAVEON D. NICKERSON, | ) ) ) | Honorable Katherine S. Gorman, |
| Defendant-Appellant. | ) | Judge, Presiding. |

_____

PRESIDING JUSTICE O'BRIEN delivered the judgment of the court.
Justices Daugherity and Hauptman concurred in the judgment.

_____

**ORDER**

¶ 1      *Held*: (1) The trial court did not abuse its discretion when it denied defendant's motion for a mistrial. (2) The trial court did not abuse its discretion in sentencing defendant.

¶ 2      Defendant, Daveon D. Nickerson, appeals the trial court's denial of his motion for a mistrial. In the alternative, defendant argues that the trial court imposed an excessive sentence because it failed to give sufficient consideration to mitigating factors. We affirm.

¶ 3                             I. BACKGROUND

¶ 4        Defendant was charged with drug-induced homicide for the death of Tara Colvin, to whom he sold drugs. 720 ILCS 5/9-3.3(a) (West 2020). The indictment alleged that defendant sold heroin to Colvin, she ingested it, and the heroin caused her death.

¶ 5        A jury trial took place. Colvin's father, stepmother, and fiancé testified to Colvin's drug addiction and the events of the evening/morning of her death. Larry Steele, a sergeant with the Tazewell County Sheriff's Department, testified that he recovered items from Colvin's bedroom the day she was discovered dead, including a spoon, a plastic bag that contained a white powdery substance, and two syringes, one empty and one filled with a liquid. The white powder was sent for testing. Per stipulation, Sara Anderson, a forensic scientist, would testify that she tested the white powder and it tested positive as 0.1 grams of fentanyl. The parties further stipulated that Colvin's cause of death was fentanyl intoxication. Defendant's written and videotaped statements were entered into evidence. Other law enforcement officers also testified or their testimony was entered by stipulation.

¶ 6        During deliberations, the jury asked two questions. The first note stated, "Knowingly delivered drugs that killed her or knowingly delivered fentanyl[?]" With agreement from the parties, the court responded that the jury should refer to the jury instructions "with the propositions" and "the definition instruction."

¶ 7        The second question was "Why were people in the gallery recording the trial on their phones[?] Example, guy in the Nautica sweatshirt today." Defense counsel moved for a mistrial and the trial court adjourned for the day to take the issue under advisement and for the attorneys to research the issue. The following morning, the parties agreed at least one person may have filmed the proceedings. They discussed alternatives to a mistrial. Defense counsel asked the court to question the jurors to determine if the individual filming the proceedings had influenced their

deliberations. The court rejected defendant's request. It found the jury note did not suggest the jurors were scared, intimidated, or influenced by the filming. It sent an answer providing, "The court has been made aware of your concerns and they are being addressed. Continue to deliberate and consider only the evidence and the law as previously instructed." The jury then found the defendant guilty. Defendant filed a posttrial motion, arguing the trial court erred in denying his motion for a mistrial. The motion was denied.

¶ 8　　　A sentencing hearing took place. The presentence investigation report (PSI) provided the following information. Defendant's father was absent during his childhood and his mother worked two jobs and was thus also absent. His sole role models were the neighborhood drug dealers. At 10 years old, defendant was committed to a psychiatric hospital because he heard voices telling him to kill his brother. Defendant began selling and using drugs, including alcohol, cannabis, Xanax, ecstasy, and Percocet on a daily basis from the age of 18 until his arrest. Defendant was remorseful and wished to participate in substance abuse treatment. Defense counsel pointed to defendant's minimal criminal history and the significant negative impact incarceration would have on his family, including his three children. Counsel also pointed out Colvin's long history with substance abuse and that her long-term ongoing use was not connected to defendant. Defendant gave a statement in allocution, expressing remorse to Colvin's family and his own, and referencing his difficult childhood. The trial court sentenced him to a term of imprisonment of 18 years, followed by 3 years of mandatory supervised release. Defendant moved for reconsideration of his sentence, which the trial court heard and denied. He appealed.

¶ 9　　　　　　　　　　　　　　II. ANALYSIS

¶ 10　　　　　　　　　　　　　A. Motion for Mistrial

3

¶ 11 Defendant first argues that the trial court erred when it declined to question jurors about their continued impartiality following the jury note regarding the individual filming. He seeks reversal of the trial court's denial of his motion for a mistrial.

¶ 12 The federal and Illinois constitutions guarantee the right to a fair trial by an impartial jury. U.S. Const., amends. VI, XIV; Ill. Const. 1970, art. 1, §§ 8, 13. Trial before a biased jury would deprive a defendant of a substantial right and constitute an error requiring reversal. *People v. Runge*, 234 Ill. 2d 68, 102 (2009). A jury is biased when "it reasonably appears that at least some of the jurors have been influenced or prejudiced so that they cannot be fair and impartial." *People v. Thomas*, 296 Ill. App. 3d 489, 500 (1998). The challenging party bears the burden of showing that a juror has a "disqualifying state of mind," and mere suspicion of partiality is not sufficient. *Id.* A trial court's determination regarding possible jury bias and subsequent decision on a motion for mistrial are reviewed for an abuse of discretion. *People v. Luellen*, 2019 IL App (1st) 172019, ¶ 36. The initial decision regarding whether to question jurors about possible bias also falls within the trial court's discretion. *Id.*

¶ 13 The application of judicial discretion necessarily implies " 'that there is [a] range of options open, which means more than one choice is permissible. ' " *Runge*, 234 Ill. 2d at 105 (quoting *United States v. Dominguez*, 226 F.3d 1235, 1247 (11th Cir. 2000)). "A trial court abuses its discretion where 'it fails to understand it has discretion to act or wholly fails to exercise its discretion.' " *People v. Luellen*, 2019 IL App (1st) 172019, ¶ 38 (quoting *People v. Lovelace*, 2018 IL App (4th) 170401, ¶ 33). A trial court is not required to question jurors when the likelihood of influence is slight or not well substantiated; after considering the circumstances, it may instead conclude that questioning jurors would compound a potential problem by drawing attention to it and decide to take a "less is more" approach. *Runge*, 234 Ill. 2d at 103-04.

4

¶ 14        Here, the question of jury bias arose when the jury sent a note to the court at 4:40 p.m. on the day deliberations had begun. The note read, "Why were people in the gallery recording the trial on their phones[?] Example, guy in the Nautica sweatshirt today." The court read the note to the attorneys for the parties and asked, "How would you like me to respond to that?" After some discussion, defense counsel made a motion for mistrial. The attorneys then agreed to the court's suggestion that the jury be sent home for the day, giving the parties time to research the issue before continuing the discussion.

¶ 15        The following morning, the attorneys relayed to the court that they had each questioned the family members of the respective parties who had been in the gallery the previous day. Family members from both sides confirmed that they had seen an unknown person in the gallery who had been holding his phone in a way that suggested he might be recording. At that point, the court asked defense counsel if he was still requesting a mistrial, or if he would like to consider alternatives. Defense counsel replied, "I think we'd be happy to consider that. *** [O]ur goal is not a mistrial."

¶ 16        When the court asked for suggested remedies, the State asked the court to "admonish the jury about what happened in court, [and] the importance of just following the instructions of the Court." In response, defense counsel said that the decision was "in the sound discretion of the Court," but that "perhaps some form of inquiry might be better than just an admonition."

¶ 17        At that point, the court stated, "I have really thought about this since we left yesterday," and recounted the facts of *Play Beverages, LLC v. Playboy Enterprises International, Inc.*, 2018 IL App (1st) 171850. In that case, three jurors approached the court clerk at the end of the first day of deliberations to ask if there was a "secret way out." *Id.* ¶ 48. When the clerk asked for clarification, the jurors indicated that they were scared of some of the men who had been sitting in

5

the gallery. *Id.* The clerk told the jurors that everyone had already left, and that the clerk would inform the judge of their concern. *Id.* The next morning, the judge summoned the parties to chambers to relate the exchange between the three jurors and the court clerk. *Id.* The plaintiff argued that the jurors had been referring to men associated with Play Beverages, LLC, while the defendant argued that it was unclear who the jurors might have been referring to. *Id.* ¶ 49. The court responded by issuing an instruction to the jury, assuring the jurors of security measures in place for their safety. *Id.* ¶¶ 50-52. Later that day, the plaintiff asked the court to exercise its discretion to question the three jurors who had expressed fear, in order to determine if the jurors had become biased. *Id.* ¶ 54. However, the court determined that questioning the jurors was not warranted. *Id.* ¶ 58. On appeal, plaintiff asserted that the trial court had abused its discretion by declining to question the three jurors. *Id.* ¶ 78. The First District disagreed, citing to our supreme court's holding in *Runge* as it explained that "sometimes 'less is more' when it comes to judicial investigation [of juror bias]." *Id.* ¶ 79.

¶ 18 In the instant case, the trial court cited to *Runge* and then said, "[I]t is within my discretion, and I am very concerned that if we start inquiring, it's going to become a bigger problem than it is at the moment." Defense counsel objected to not questioning the jurors. In response, the court observed that the question from the jury was "pretty generic" and did not appear to express fear, and the court reiterated that it did not want to call more attention to the issue than necessary. At the conclusion of the discussion, the court sent a note to the jury that read: "The court has been made aware of your concerns and they are being addressed. Continue to deliberate and consider only the evidence and the law as previously instructed."

¶ 19 On appeal, defendant argues that the court abused its discretion when it decided against interviewing the jurors. However, regarding this issue, both parties state in their briefs that an

6

abuse of discretion occurs when a trial court " 'fails to understand it has discretion to act or wholly fails to exercise its discretion.' " *Luellen*, 2019 IL App (1st) 172019, ¶ 38 (quoting *Lovelace*, 2018 IL App (4th) 170401, ¶ 33). Here, the record establishes the trial court understood that its response to the jury's question fell within its discretion, and the court exercised that discretion: the court researched the applicable case law, considered the suggestions of both parties, and used its discretion to determine the best course of action under the circumstances. Therefore, we find that the trial court did not abuse its discretion when it declined to question the jurors about their impartiality.

¶ 20                                                   B. Excessive Sentence

¶ 21        In the alternative, defendant argues that his 18-year sentence is excessive because the trial court failed to give sufficient consideration to his limited criminal history, his young age at the time of the offense, his mental health and substance abuse issues, and his family ties.

¶ 22        A sentence that falls within the statutory limits is reviewed for abuse of discretion. *People v. Calhoun*, 404 Ill. App. 3d 362, 385 (2010). An abuse of discretion occurs when "the sentence is greatly at variance with the spirit and purpose of the law, or manifestly disproportionate to the nature of the offense." *People v. Stacey*, 193 Ill. 2d 203, 210 (2000). In sentencing, a trial court must consider all factors in aggravation and mitigation, including the defendant's age, demeanor, mentality, criminal history, habits, social environment, and education, as well as the nature and circumstances of the crime. *Calhoun*, 404 Ill. App. 3d at 385. Because the trial court is in a better position than a reviewing court to assess relevant factors, a reviewing court may not substitute its judgment for that of the trial court merely because it would have weighed those factors differently. *Stacey*, 193 Ill. 2d at 209. A trial court is presumed to have considered all relevant factors and has no obligation to recite those factors or to assign a weight or value to each factor. *People v. Wilson*,

7

2016 IL App (1st) 141063, ¶ 11. Rather, a defendant bears the burden of showing that the court did not consider the relevant factors. *Id.*

¶ 23    The penalty range for drug-induced homicide was 6 to 30 years at 75%. 730 ILCS 5/5-4.5-25(a) (West 2020). Here, the State sought 25 years and $12,000 in restitution to the victim's family for the price of her funeral and death-related expenses. It pointed to defendant's criminal history, noting convictions for traffic and misdemeanor offenses, and ordinance violations, as well as a conviction for manufacture, delivery, or possession of a controlled substance. The State also emphasized defendant's long tenure selling drugs daily and the deterrent effect of a lengthy sentence. In response, defense counsel argued defendant's criminal history was inconsequential, a fact which counsel noted as significant given defendant's difficult childhood. The defense sought a term of eight to nine years.

¶ 24    In sentencing defendant, the court stated it considered the PSI, the evidence and arguments, the victim impact statements, defendant's statement in allocution, the statutory factors in aggravation and mitigation, defendant's history and character, and the nature and circumstances of the offense. It found as factors in aggravation defendant's ongoing sale of drugs, its detrimental consequences in the community, and the need to deter it. It acknowledged defendant's difficult childhood but noted defendant was now an adult. The court considered that defendant did not contemplate Colvin's death. It also considered the hardship to defendant's family. It stated that "this has just got to stop" before imposing an 18-year sentence.

¶ 25    At the sentencing hearing, defendant argued that, given his troubled upbringing, he had a "limited" criminal history, with just one felony among a number of misdemeanors. On appeal, defendant asserts that his minimal criminal history was a mitigating factor that was not given due consideration at sentencing; however, prior criminal activity constitutes an aggravating factor. See

730 ILCS 5/5-5-3.2(a)(3) (West 2020). In addition, the term "criminal activity" does not limit itself to convictions (see *People v. Brandon*, 243 Ill. App. 3d 515, 524 (1993))—and it is undisputed that selling illegal drugs had been defendant's sole source of income for the three years prior to his arrest for drug-induced homicide.

¶ 26 On appeal, defendant cites neuroscientific research to assert that 21-year-olds are less culpable than older adults because they are developmentally similar to adolescents in some ways. In his reply brief, defendant states that he is not making a *Miller* argument or claiming that he should have been treated as a juvenile at sentencing. See *Miller v. Alabama*, 567 U.S. 460, 471 (2012). Rather, defendant argues that his relative youth should have been included among the mitigating factors considered at sentencing. However, defendant fails to establish that his age was not among the mitigating factors considered when the trial court fashioned his sentence.

¶ 27 Defendant only observes (1) that the court did not explicitly acknowledge that he was 21 years old at the time of the offense, and (2) that the court commented at the sentencing hearing that he was "not a kid now." Although defense counsel did not argue, either at the sentencing hearing or in the motion to reconsider the sentence, that age was a mitigating factor, the record establishes that the court was aware of defendant's relative youth at the time of the offense. Defendant was present at the trial, and in addition, his date of birth was listed on the PSI considered by the court. The court's comment that defendant was "not a kid" is a factual statement, and defendant concedes the point by disclaiming the argument that he should have been sentenced as a juvenile.

¶ 28 Defendant next argues that the trial court failed to give sufficient consideration to his past mental health and substance abuse issues. In support of this argument, defendant cites to details contained in the PSI. However, the record shows that the court considered the PSI prior to arriving

at a sentencing decision. We therefore presume that the trial court considered these factors to the extent that they are relevant. We note that, although mental illness is a statutory factor in mitigation where the defendant's illness "substantially affected his or her ability to understand the nature of his or her acts or to conform his or her conduct to the requirements of the law" per section 5-5-3.1(a)(16) of the Unified Code of Corrections (730 ILCS 5/5-5-3.1(a)(16) (West 2020)), the Illinois Supreme Court "has repeatedly held that 'information about a defendant's mental or psychological impairments is not inherently mitigating.' " *People v. Wheeler*, 2019 IL App (4th) 160937, ¶ 44 (quoting *People v. Madej*, 177 Ill. 2d 116, 139 (1997)). Similarly, drug addiction is not inherently mitigating. See *People v. Musgrave*, 2019 IL App (4th) 170106, ¶ 60.

¶ 29 Finally, defendant argues that the court did not give sufficient weight to his family ties. The record establishes that the court considered letters in support of defendant from his mother, stepfather, girlfriend, a family friend, and a youth pastor. The court also considered the PSI, which showed that defendant resided with his girlfriend and three young children prior to his incarceration. At the sentencing hearing, the court explicitly stated that it had considered the hardship to defendant's family and children. Defendant does not deny that the trial court considered his family ties; rather, he asks us to reevaluate the relative weight given to this mitigating factor. We decline to do so.

¶ 30 In summary, the record indicates that the court considered all relevant factors in aggravation and mitigation. Further, the 18-year sentence, which is the midpoint of the 6-to-30-year statutory range, is not greatly at variance with the spirit and purpose of the law or disproportionate to the nature of the offense. Accordingly, we find the trial court did not abuse its discretion in sentencing defendant.

¶ 31                                                 III. CONCLUSION

¶ 32    For the foregoing reasons, the judgment of the circuit court of Tazewell County is affirmed.

¶ 33    Affirmed.